United States District Court
Middle District of Florida
Jacksonville Division

**UNITED STATES OF AMERICA**,

   *Plaintiff,*

v.                                                                                                          **NO. 3:19-cr-165-J-39PDB**

**CLEOPHUS MCCASKILL**,

   *Defendant.*

---

# Order

The undersigned conducted an evidentiary hearing on Cleophus McCaskill's motion to suppress. Docs. 26, 28, 30, 49. One of his witnesses—his wife, Pamela McCaskill—appeared without a subpoena and refused to answer certain questions on cross-examination based on the Fifth Amendment privilege against self-incrimination.[1] The United States orally moved to strike portions of her testimony, Doc. 31, and thereafter moved to clarify and supplement its motion, Doc. 32.[2] He initially took no position on striking her testimony but later argued against striking her testimony. Doc. 43 at 5–6.

Ms. McCaskill asserted "the Fifth" in response to these questions:

---

[1] After advising Ms. McCaskill of the privilege against self-incrimination and at her request, the Court appointed counsel to represent her and gave her an opportunity to confer with counsel.

[2] The United States moves to strike only Ms. McCaskill's testimony about events on the day of the traffic stop at issue, not her testimony about her purchase and sale of the car and obtaining title to it. *See* Doc. 49 at 12 (prosecutor explaining which testimony the United States seeks to strike).

"On March 17th, 2019, when your car was stopped by the Putnam County Sheriff's Office, there were bags of marijuana in a black and green cooler in the back seat of your car, correct?"

"Did that marijuana belong to your husband?"

"No one planted that marijuana on you or your husband, correct?"

"At some point during the traffic stop on March 17th, 2019, before your husband got out of the car, he handed you a handgun, correct?"

"And that was a handgun in a block holster or cup, correct?"

"You were aware also that your husband had a large gun in a brown duffel bag in the back seat."

"That gun belonged to your husband also, correct?"

"You testified last week that you never told the officers they could search your car, correct?"

"And you testified that you never told the officers there was a gun in the car, correct?"

"During your testimony last week, you made several accusations against the deputy sheriffs involved in this case, do you recall that?"

"Is there anything you want to correct about that testimony or add?"

"Is it your testimony that the officers planted evidence in your car?"

"Is it your testimony that the officers forced you into giving a statement?"

"Did you report any of that to the sheriff?"

"Did you report any of those allegations to the Florida Department of Law Enforcement?"

"Did you report any of those allegations to the Federal Bureau of Investigation?"

"Did you report those allegations to anyone?"

Doc. 49 at 8–10.

For its argument for striking portions of Ms. McCaskill's testimony, the United States relies on *Brown v. United States*, 356 U.S. 148 (1958), *Fountain v. United States*, 384 F.2d 624 (5th Cir. 1967), and *United States v. Garcia*, 778 F. App'x 779 (11th Cir. 2019).

*Brown* involved a criminal contempt proceeding against a defendant who, during a civil denaturalization proceeding, refused to answer certain questions on cross-examination based on the privilege against self-incrimination. 356 U.S. at 149–52. The Supreme Court held that, during a civil proceeding, where a party takes the stand voluntarily and testifies on her own behalf, she cannot validly invoke the privilege regarding matters made relevant by her direct examination. *Id.* at 154–55.

*Fountain* involved a criminal jury trial. 384 F.2d at 627. Balancing a witness's privilege against self-incrimination against a criminal defendant's right to confront a witness against him, the former Fifth Circuit held that where a witness legitimately invokes the privilege during cross-examination, the trial court may strike all or part of the direct testimony. *Id.* at 627–28. The "ultimate inquiry is whether the defendant has been deprived of his right to test the truth of the direct testimony." *Id.* at 628. "If he has, so much of the direct testimony as cannot be subjected to sufficient inquiry must be struck." *Id.* "The distinction is generally drawn between invoking the privilege as to collateral matters, not requiring the striking of direct testimony, and invoking it as to direct matters." *Id.* (internal quotations omitted). The "question in each case must finally be whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony." *Id.*

*Garcia* also involved a criminal jury trial. 778 F. App'x at 784. The Eleventh Circuit held the trial court did not abuse its discretion in striking a defense witness's direct testimony where the witness invoked her privilege against self-incrimination

3

during cross-examination. *Id.* at 788–89. While striking a witness's testimony is a drastic remedy not lightly invoked, "'it may be the only appropriate remedy when refusal to answer the questions of the cross-examiner frustrates the purpose of the process.'" *Id.* at 788 (quoting *Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir. 1988)). Because the witness's invocation of the privilege left the United States with no opportunity to test the truth of her testimony, the trial court did not abuse its discretion. *Id.* at 789.

For his part, Mr. McCaskill relies on *United States v. Watkins*, No. 17-80222, 2018 WL 2382013 (S.D. Fla. May 25, 2018) (unpublished). *Watkins* involved a suppression hearing at which a witness—testifying under a defense subpoena—invoked the privilege against self-incrimination in response to the prosecutor's questions on whether officers had found marijuana in her home, whether officers had found blunts in her bedroom, whether officers had found five grams of marijuana in her living room, and whether she or anyone else had been smoking marijuana when officers arrived at her home. 2018 WL 2382013 at *1. The court denied the United States' motion to strike the testimony, reasoning the matter involved a pretrial evidentiary hearing; the matter involved no risk of jury prejudice; the court could fairly and properly evaluate the testimony without resort to the extreme remedy of striking a witness's testimony; some questions arguably were collateral; the United States established the existence of marijuana in the home through other evidence; and the court could determine her credibility on its own by considering the entire record. *Id.*

The reasoning in *Watkins* is persuasive and adopted here. In addition, the United States tested the truth of Ms. McCaskill's testimony through cross examination before she asserted the privilege against self-incrimination, through the video of her interview, and through other evidence, including rebuttal evidence.

The United States' oral motion to strike portions of Ms. McCaskill's testimony, Doc. 31, is **denied**. The United States motion to clarify and supplement that motion, Doc. 32, is **granted**.

**Ordered** in Jacksonville, Florida, on June 11, 2020.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:	David Mesrobian, Assistant United States Attorney
	Lisa Call, Assistant Federal Defender
	Percy King, Esquire